*Report dismissed.*

---

ROBERT F. THOMPSON, trustee, *vs.* HARRY F. BRAY, administrator, & others.

Essex.    April 5, 1943. — May 24, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Devise and Legacy,* "Heirs."

Upon construction of an entire will, the intention of the testator was shown to be that the principal of a spendthrift trust created for the benefit of a son of the testator for his life, stated in the will to "go to my lawful heirs according to the laws of descent and distribution in

Massachusetts" if there were no issue of the son living at the death of his widow, should be distributed in that event to those who would have been the testator's heirs had he died at the time of the death of the son's widow.

PETITION, filed in the Probate Court for the county of Essex on May 29, 1942, for instructions.

The case was heard by *Phelan*, J.

*C. R. Clark*, for the respondent Merchant and others.

*L. S. Simonds*, for the respondent Thompson, administrator.

*M. I. Bernstein*, for the respondent Bradley, administrator, submitted a brief.

LUMMUS, J. This is a petition for instructions, brought by the trustee under the will of Robert Fears, who died August 27, 1886, leaving as his only heirs his four children; Robert R. Fears, George L. Fears, Otis S. Fears and Esther L. Pew.

By his will, which was executed on April 11, 1885, Robert Fears gave to each of his three children other than Otis S. Fears, one fourth of the residue of his estate. The other fourth he gave to trustees upon the following trust: "To pay to my son Otis S. Fears, one thousand dollars out of the same, in two equal payments, within one year after my death, and to pay the income, rents and profits of the remainder after the payment of said one thousand dollars, semiannually for the support and maintainance [*sic*] of my said son, Otis S. Fears and his family during his life, without the right of alienation or anticipation by said Otis S. Fears; and no part of such income rents and profits shall be used or applied by said trustees in payment of any debt contracted by the said Otis S. Fears before my death, or that be thereafter contracted by him or his family; except as hereinafter provided, it being my intention and purpose that such income, rents and profits shall be applied by said trustees to the support and maintainance [*sic*] of said Otis S. Fears and his family and not otherwise. And at the death of said Otis S. Fears, if he shall leave issue, and his present or any future wife shall survive him, then the rents, income and profits of said trust property shall be applied by said

trustees to the support and maintainance [*sic*] of his widow and issue in equal shares to each, so long as said widow lives and remains unmarried; but if he leaves no widow, or if his widow remarries, or at her death, if any of the issue of said Otis S. Fears shall survive, said trustees shall pay over and convey the principal of said property to said issue in equal shares; and to the issue of any deceased child by representation. But in case there shall be no issue of said Otis S. Fears living at the death of his said widow, then the whole of said trust estate shall go to my lawful heirs according to the laws of descent and distribution in Massachusetts, to them and to their heirs and assigns forever; and the same in all respects if said Otis S. Fears leaves neither widow nor issue at his death."

It is agreed that Otis S. Fears died on November 14, 1910, intestate, leaving no issue, but a widow, Mary G. Fears, who died on November 23, 1941, without having remarried, leaving collateral heirs. It is agreed that "at the time the will was executed, the testator apparently considered that Otis S. Fears was improvident."

Of the other three heirs of the testator, Robert R. Fears died on May 14, 1914, leaving two children, Adeline Thompson and Harriet Torsey. Harriet died in 1935, leaving one daughter, Ada F. Merchant. George L. Fears died on January 30, 1887, leaving two children, Grace L. Bray and Albert S. Fears. Albert died in 1917, leaving a widow, M. Gertrude Fears, and one daughter, Eleanor Fears. Grace L. Bray died on January 17, 1943. Esther L. Pew died on February 22, 1907, leaving one daughter, Clara B. Fenton, who died in 1935, leaving three children.

The respondent Harry F. Bray as administrator of the estate not already administered of George L. Fears, the respondent Edward F. Fenton as administrator with the will annexed of the estate of Esther L. Pew not already administered, and the respondent Robert F. Thompson as administrator with the will annexed of the estate of Robert R. Fears not already administered, each claims one third of the trust fund, to the exclusion of Temple A. Bradley as administrator of the estate of Otis S. Fears. The Probate Court, how-

ever, entered a decree dividing the trust fund into four shares, and awarding one share to each of the administrators mentioned above, including the administrator of the estate of Otis S. Fears. Various parties interested in the estates of the other heirs of the testator appealed.

In the accurate use of language, a gift by way of remainder to the heirs of the testator means to the heirs who were such at his death, even though the life tenant was one of them. *Old Colony Trust Co.* v. *Clarke*, 291 Mass. 17, 20, 21, and cases cited. That will ordinarily be the interpretation adopted, for "it would be simple for a testator to say that a distribution is intended among those who would be his heirs if he had died at the happening of some future event, or among those of his heirs surviving at some future date, or among his heirs excluding some particular person or persons or branch, if such were his purpose." *Gilman* v. *Congregational Home Missionary Society*, 276 Mass. 580, 583. But even though not expressly required, a distribution among those who would have been his heirs had he lived until the termination of the life estates or until some other future time may be found to have been intended, where the will as a whole shows an intention to use the word heirs in an artificial sense. *Heard* v. *Read*, 169 Mass. 216, 222, 223. *Welch* v. *Howard*, 227 Mass. 242. *Warren* v. *Sears*, 303 Mass. 578.

The will of Robert Fears in another place provided for a division of his lot of land on Prospect Street and Liberty Street, and provided that the house on Liberty Street, with the land around it, go "unto my son Otis S. Fears to hold during his natural life, and at his death to go to his widow so long as she remains his widow; but in case she remarries or dies said house and land is to go to his child or children, share and share alike, the issue of any deceased child taking by right of representation. But in case any one of said children shall die without issue the share of such deceased child shall go to his or her brothers or sisters, the issue of any deceased brother or sister taking by right of representation. And in case all the children of my said son Otis S. Fears shall die without issue, their father and mother hav-

ing previously deceased, or if they survive their children, on the death of the survivor of them, it is my will that said house and land shall go to my legal heirs, to them and their heirs and assigns forever; provided however, that if the wife of said Otis S. Fears shall survive her husband and children, and shall remarry, then one fifth of said house and land shall go to her and her heirs and four fifths only of the same to my heirs as aforesaid."

It seems clear that as to the Liberty Street property, the testator intended to give one fifth to the widow of Otis S. Fears if she survived his issue and remarried. The Liberty Street property was sold by the trustees in 1917 for $3,300, and the proceeds were added to the trust fund. There is no reason why the word heirs should have a different meaning in the gift of the one fourth of the residue in question here. *Welch* v. *Blanchard,* 208 Mass. 523, 526, 527. If the wife of Otis S. Fears should survive him and any descendants of his, she could obtain a fifth of the Liberty Street property by remarrying and thus terminating the life estate. If the intention was to give her both the one fifth and a share in the residue of the fourth part, it would seem unnatural to give her the fifth by name and to let her take the other share merely through her deceased husband under his right as an heir of the testator. *Welch* v. *Howard,* 227 Mass. 242, 246.

Besides, the will provides as to the one fourth of the residue that the widow of Otis S. Fears shall lose her interest if she remarries. It would be inconsistent with this provision to have her reappear, after remarriage, as an heir of Otis S. Fears. *Welch* v. *Howard,* 227 Mass. 242, 246. For her interest as his heir, see R. L. c. 140, § 3, as amended by St. 1905, c. 256; G. L. (Ter. Ed.) c. 190, § 1; *Lavery* v. *Egan,* 143 Mass. 389; *Dana* v. *Dana,* 226 Mass. 297, 299; *Yerxa* v. *Youngman,* 241 Mass. 251, 254; *Hite* v. *Hite,* 301 Mass. 294, 296; *Seavey* v. *O'Brien,* 307 Mass. 33, 37. The record is silent as to the value of the estate left by Otis S. Fears.

The construction contended for by the administrator of the estate of Otis S. Fears would divert a considerable share of the property, at least, from the issue of the testator for

the benefit of the heirs of the widow of Otis S. Fears. The scheme of the will did not contemplate such diversion. The widow was given only a life estate.

The spendthrift provisions of the trust for Otis S. Fears, too, are inconsistent with the idea that he was in any event to have a remainder interest as one of the heirs of the testator, which he might convey and which might be reached by his creditors. *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 247. Compare *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 21, 22.

On the whole, we are of opinion that the distribution which was to be made upon the death of the widow of Otis S. Fears was to the persons who would have been the heirs of the testator had he lived until that time. The decree should be reversed, and a distribution ordered to those persons. The matter of costs and expenses is to be in the discretion of the Probate Court.

*Ordered accordingly.*