OLD COLONY TRUST COMPANY, trustee, *vs.* BARBARA B. STEPHENS & others.

Middlesex.    April 3, 1963. — May 7, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Devise and Legacy,* Construction favoring validity, Heirs at law, Time of vesting, Remainder.    *Trust,* Termination.

In order to avoid invalidity under the rule against perpetuities, a will containing provisions establishing a trust to pay the income to the testator's widow during her life and then to his daughters during their lives, and to pay to the "issue" of any deceased daughter her share of the income, with a provision for distribution of the principal "upon the expiration of this trust" but no specific provision as to the time of its termination, should be interpreted as terminating it at the death of the last survivor of the widow and the daughters.    [96]

Interpreted as a whole in the circumstances, a certain will establishing a trust with the testator's widow and daughters and the issue of any deceased daughter the income beneficiaries until the termination of the trust at the death of the last survivor of the widow and the daughters, when the principal was to be distributed "in equal parts" to the testator's "heirs," did not disclose a clear intention that "heirs" should be determined as of the time of termination of the trust, so that the usual rule of construction determining them as of the testator's death was applied even though thereby the widow and the daughters as the heirs of the testator at his death were the remaindermen as well as life beneficiaries.    [96–99]

PETITION for instructions filed in the Probate Court for the county of Middlesex on April 6, 1961.

The case was reported by *Monahan, J.*

*Joseph R. Watkins* stated the case.

*Kendall L. Johnson* for the respondent Barbara B. Stephens.

*Philip B. Buzzell* (*Roy A. Hammer* with him) for the respondents Edith Dodge Bird & another.

*Monroe L. Inker,* guardian ad litem, pro se.

CUTTER, J.   This is a petition for instructions by the trustee under the will of Julius F. Ramsdell (the testator). The probate judge has reported the case without decision upon the pleadings and stipulated facts as a case stated.

The testator executed his will on December 5, 1905.   He then had as his heirs presumptive his wife, two married daughters, and one unmarried daughter.   A grandchild was then living.   The somewhat imprecise will was probably drawn for the testator by a savings bank officer who was not a lawyer.   The testator died on October 4, 1909, survived by his widow and three daughters.   He had three then living grandchildren.

By his will (2d par.) the testator gave cash legacies of $2,500 each to his two sons-in-law and of $10,000 to each of his daughters.   He established a trust as follows (3d par.): "I give . . . to the . . . [t]rust [c]ompany . . . the sum of . . . [$75,000] . . . in trust . . . to pay over the net income thereof to my wife . . . during . . . her . . . life, and upon the decease of my said wife to hold the same upon the further trust to pay over the net income thereof in equal shares to my . . . three daughters, Edith E. Brown, Katherine D. Dodge, and Helen M. Ramsdell during . . . their . . . lives, and upon the death of any one of my . . . daughters without issue to pay over such deceased daughters' share to the survivor or survivors of them.   In case, however, any one of my daughters shall die leaving issue, then I direct my . . . [t]rustee to . . . pay over the net income due to said deceased daughter to her issue in equal shares. Upon the expiration of this trust, I direct my said [t]rustee to pay over in equal parts the principal sum to my heirs-at-law."   The residue of the estate was given to the widow, "outright, she to exercise her own judgment as to the disposition of the amount that remains at her decease either by her will to increase the trust fund held by . . . [the] . . . [t]rust [c]ompany, or to divide the same outright among our . . . daughters or their issue."

The unmarried daughter died in 1924, intestate and without issue, leaving her mother, the widow, as her sole heir.

The widow died intestate in 1939 leaving as her sole heirs her two daughters, Mrs. Dodge and Mrs. Brown. Following the death of the widow, the trustee paid the net income of the trust to the two married daughters in equal shares.

Mrs. Brown died in 1942. Thereafter the trustee paid Mrs. Brown's half share of the trust income in equal shares to her daughter (Mrs. Stephens) and to her grandson (the son of Mrs. Brown's deceased daughter). The trustee continued to pay the remaining share of the trust income to Mrs. Dodge, until her death in November, 1960.[1]

1. The will does not clearly state when the trust was to end. There is no overall provision limiting the term of the trust (see *Second Bank–State St. Trust Co.* v. *Second Bank–State St. Trust Co.* 335 Mass. 407, 410; cf. *Bowen* v. *Campbell,* 344 Mass. 24, 27–28) to specified lives in being plus twenty-one years or requiring that the ultimate gifts be vested within such a period. Although the language used in the trust gift may suggest that the trust could continue after Mrs. Dodge's death for the purpose of paying income to the "issue" of each deceased daughter, the will does not appropriately limit, to interests not too remote, the term "issue" in respect of a deceased daughter of the testator. See *Welch* v. *Colt,* 228 Mass. 511, 515; *Watson* v. *Goldthwaite,* 345 Mass. 29, 34. See also *Welch* v. *Phinney,* 337 Mass. 594, 596. Consequently, to avoid any construction of the trust that would violate the rule against perpetuities (see *Second Bank–State St. Trust Co.* v. *Second Bank–State St. Trust Co., supra,* at p. 412; *Bowen* v. *Campbell, supra,* at pp. 26–27; *Watson* v. *Goldthwaite, supra,* at pp. 34–35), we interpret the ambiguous will, as do the parties, as providing for the termination of the trust at the death of the last survivor of the widow and the three daughters.

2. The ordinary rule of construction is that a testator's heirs at law are to be determined at the time of his death

---

[1] Mrs. Brown left by will all her property to her husband who in turn left all his property to Mrs. Stephens. Mrs. Dodge bequeathed her interest in the trust fund to her daughter and to a grandson in equal shares.

in the absence of "words indicating a clear intention that
. . . [the property] shall go to those who may be his rela-
tions . . . at the time of the happening of the contingency
upon which the estate is to be distributed." *Childs* v. *Rus-*
*sell,* 11 Met. 16, 23. *Tyler* v. *City Bank Farmers Trust Co.*
314 Mass. 528, 531. *Second Bank–State St. Trust Co.* v.
*Weston,* 342 Mass. 630, 636. *Perkins* v. *New England Trust*
*Co.* 344 Mass. 287, 291–292. See *Old Colony Trust Co.* v.
*Tufts,* 341 Mass. 280, 283. Certain respondents argue that
the trust fund should be distributed to those persons who
would have been the testator's heirs at law if he had died
intestate at the termination of the trust in 1960. We must
determine whether the testator's purpose was inconsistent
with the usual rule of construction (see *Old Colony Trust*
*Co.* v. *Clarke,* 291 Mass. 17, 20–21), by ascertaining the tes-
tator's intention as shown by the whole instrument, consid-
ered in the light of the circumstances known to him. See
*Wheeler* v. *Kennard,* 344 Mass. 466, 469.

We look first at the testator's general plan. He gave
monetary legacies to each daughter and each son-in-law.
He then set up a trust for his wife for life, with remainder
life interests to his daughters. There was no power to ex-
pend principal for life beneficiaries nor was there a spend-
thrift trust provision. Compare *Boston Safe Deposit &*
*Trust Co.* v. *Waite,* 278 Mass. 244, 247, with *Perkins* v. *New*
*England Trust Co.* 344 Mass. 287, 291–292. The share of
income of a daughter who died leaving issue was to go to
such issue. Upon the expiration of the trust (at the last
surviving life beneficiary's death, as we have interpreted
the will) the trust fund was to go "in equal parts . . . to
. . . [the testator's] heirs-at-law." The general plan was
to protect the widow first, then each daughter, then the issue
of a daughter who died leaving issue. The gift of income
to the issue of a daughter who died leaving issue and the
reference to issue in the residuary provision are indica-
tions, to some extent, of an intention (see *Warren* v. *Sears,*
303 Mass. 578, 581–583) to keep the trust fund in the line of
the testator's issue. See *Knowlton* v. *Forbush,* 322 Mass.

703, 704–705.   This intention, of course, as the testator should have realized, might be defeated if the ultimate gift to the testator's "heirs at law" was to his heirs determined at his death, for such an interpretation would give to each daughter (including his unmarried daughter) the ability to dispose by will or assignment of her ultimate remainder interest.

The words of the ultimate gift may tend to show that the testator was thinking of a distribution to persons living at the time of the termination of the trust, when his wife and daughters would be dead.   The phrase "Upon the expiration of this trust" points to that time.   The words "in equal parts" may also do so.   They show at least some intention to affect the shares[2] in which the testator's heirs would take at the termination of the trust, which in turn may indicate an intention to do more than "to let the law take its course" after the termination of the life estates. Cf. *Welch* v. *Blanchard,* 208 Mass. 523, 527; *Old Colony Trust Co.* v. *Sullivan,* 268 Mass. 318, 320.

In view of the gift to the issue of a deceased daughter, this is not a case where the ultimate gift to heirs would take effect only after the death of all the persons specified in the trust provisions as objects of the testator's bounty.   Issue of a deceased daughter of the testator might be alive (as they in fact were) at the death of the surviving life beneficiary.   Such issue would be capable of taking a remainder interest in possession and enjoyment.   Accordingly, there is basis for regarding the ultimate gift to the testator's heirs as not merely a catchall provision.   Cf. *Whall* v. *Converse,* 146 Mass. 345, 348–349; *Loring* v. *Sargent,* 319 Mass. 127, 128–129; *Bagley* v. *Kuhn,* 322 Mass. 372, 374–375; *Second Bank–State St. Trust Co.* v. *Weston,* 342 Mass. 630, 634–635; *Perkins* v. *New England Trust Co.* 344 Mass. 287, 291.   Cf. also *New England Trust Co.* v. *Watson,* 330 Mass. 265, 268.

---

[2] A distribution in equal shares to the estates of the widow and the three daughters would be different from that, which, under the statutes in force at the testator's death in 1909, would govern the distribution of any intestate property of his, viz., one third to the widow and two ninths to each daughter. See R. L. c. 140, § 3 (as amended by St. 1905, c. 256); c. 133, § 1.

There is inevitably some incongruity in giving to four beneficiaries equitable life interests in trust property and then giving to them, as "heirs at law," vested legal remainder interests. A testator, who thought through his will carefully, might hesitate to make such a gift. In several cases, however, this type of incongruity has not been regarded as sufficient to lead this court to interpret the word "heirs" as not "carrying its usual meaning." *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 21. *New England Trust Co.* v. *Watson,* 330 Mass. 265, 268. *Perkins* v. *New England Trust Co.* 344 Mass. 287, 291. Cf. *Taylor* v. *Albree,* 317 Mass. 57, 62–63.

We recognize that the considerations outlined above, viewed in the aggregate, furnish some support to the contention that the testator meant the ultimate remainder interest to go to his heirs determined at the termination of the trust. Nevertheless, after weighing these considerations, the actual intention of the testator remains a matter of conjecture. Accordingly, we apply the usual rule of construction. The circumstances which would support a determination of the heirs at the death of the surviving life beneficiary do not appear to us to be as persuasive as those discussed in *Warren* v. *Sears,* 303 Mass. 578, 582–585, *Thompson* v. *Bray,* 313 Mass. 717, 720–722, and *McKay* v. *Audubon Soc. Inc.* 318 Mass. 482, 486–487.

The trust fund is to be distributed in equal shares to the personal representatives of the widow and the testator's three daughters. Costs and expenses are to be in the discretion of the Probate Court.

*So ordered.*