RALPH A. ROBERTSON *vs.* ELLA B. ROBERTSON & another.

Middlesex.   November 10, 1942. — April 1, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Devise and Legacy*, Vested or contingent, Remainder, Alternative provisions.   *Words*, "Then," "Or."

Under a will giving a life estate in land with a power of sale in the life tenant, and providing further that "in case that at the death of the" life tenant the land "has not then been sold then it is to go" to a son, a daughter, and a grandson of the testator in specified shares, "or to the issue of any that may then be dead by the right of representation," the son took a remainder interest contingent upon his surviving the life tenant.

The alternative form of a provision of a will, that, in "case . . . at the death of" a designated life tenant a "homestead estate" had "not then been sold" under a power given by the will, "then" one half part of it was to go to the testator's son and other parts to other designated persons "or to the issue of any that may then be dead," tended to establish that no interest vested in the son where he did not survive the life tenant.

PETITION, filed in the Probate Court for the county of Middlesex on August 26, 1941.

The case was heard by *Leggat*, J., and in this court was submitted on briefs.

*S. A. Murphy & F. L. Williams*, for the respondent Essie Pope.

*J. A. Lovering*, for the petitioner.

FIELD, C.J.   This petition for partition of certain real estate, in Hudson, was brought in the Probate Court by Ralph A. Robertson and comes before us upon an appeal by Essie Pope, one of the respondents, from a decree of that court for partition.

The case arises upon the following facts which appear in the report of material facts made by the judge: Lillian G. Pope, late of Hudson, died July 12, 1931, leaving a will that has been duly allowed, which contained the following provisions: "Fourth; — To my daughter, Grace M. Morse and her husband, Alvah W. Morse, the use, income and enjoyment of my homestead estate situated at No. 11 Fel-

ton Street, in said Hudson for the term of their natural lives or of the life of the survivor. And I hereby grant to said Grace M. Morse and her husband, Alvah W. Morse, or the survivor of them, if, in their judgement [*sic*], or, in case of the death of one [of] them, in the judgement [*sic*] of the survivor, it becomes in their, his or her opinion necessary or expedient, to sell said homestead estate at public or private sale and in their own names, or name, to give a good and sufficient deed of conveyance of the same. The proceeds of such sale to be distributed by them, he [*sic*] or her, as follows; — To my son, Ernest F. Pope, or to his issue if he is then dead, one half part. The remainder to go in equal shares to my daughter, Ella B. Robertson, my daughter, Grace M. Morse, my grandson, Ralph A. Robertson and my son-in-law, Alvah W. Morse, or to the issue of said Ella B. Robertson, Grace M. Morse and Ralph A. Robertson, by the right of representation. In case said Alvah W. Morse is then dead and his wife survives him, she is to receive the share which would have gone to him in addition to her own. In case that at the death of the survivor of said Grace M. Morse and said Alvah W. Morse said homestead has not then been sold then it is to go to [*sic*] one half part to my said son, Ernest F. Pope, one quarter part of [*sic*] my said daughter, Ella B. Robertson and one quarter part to my said grandson, Ralph A. Robertson, or to the issue of any that may then be dead by the right of representation. Fifth; — All the rest and residue of my estate to my children, Ella B. Robertson, Grace M. Morse and my grandchild, Ralph A. Robertson, in equal shares, or to the issue of any who may be dead by the right of representation."

The testatrix left surviving her a son, Ernest F. Pope, married to Essie Pope, a daughter Grace M. Morse, married to Alvah W. Morse, a daughter Ella B. Robertson, and a grandson, Ralph A. Robertson, who, it may be guessed, was the son of Ella B. Robertson although the fact does not appear. The son, Ernest F. Pope, died January 26, 1940, leaving a widow, Essie Pope, and no issue. The daughter Grace M. Morse died June 26, 1940, leaving no

issue. Her husband, Alvah W. Morse, had predeceased her. At the time of the death of Grace M. Morse the premises described in the will of the testatrix as her "homestead estate" had not been sold. The record does not disclose what, if any, property the testatrix owned at the time of her death other than the "homestead estate."

Ralph A. Robertson, the grandson of the testatrix, brought the present petition for partition of the "homestead estate," referred to in the fourth clause of the will, and upon this petition a decree was entered that partition of the "homestead estate" be made between the petitioner, Ralph A. Robertson, and Ella B. Robertson in equal shares, and a commissioner was appointed to make such partition. The basis of this decree was that Ella B. Robertson and Ralph A. Robertson each took one quarter part of the "homestead estate" under the fourth clause of the will, but that the devise by that clause of one half part thereof to Ernest F. Pope failed by reason of his death before the death of his sister Grace M. Morse, and therefore was disposed of by the fifth or residuary clause of the will in equal shares to Ella B. Robertson, Ralph A. Robertson, and Grace M. Morse, each of whom took under said clause one sixth part of the "homestead estate," and that the one sixth part of the "homestead estate" that passed to Grace M. Morse went "by purchase from the heirs and legatees under" her will in equal shares to Ella B. Robertson and Ralph A. Robertson, so that each of them took by such transfer one twelfth part of the "homestead estate," with the result that in the aggregate Ella B. Robertson and Ralph A. Robertson each was entitled to one half part of the "homestead estate." Essie Pope, the widow of Ernest F. Pope, appealed from this decree, and contends, in substance, that the one half part of the "homestead estate" devised to her husband by the fourth clause of the will did not fail so that this part fell into the residue of the estate, but rather that it was the property of his estate in which she, as his widow, is entitled to share. The record does not show, however, to what extent she, as his widow, was entitled to share in his estate.

The question upon which the case turns is whether under a true interpretation of the will of the testatrix, Lillian G. Pope, and particularly of the fourth clause thereof, her son, Ernest F. Pope, took a vested remainder in one half part of the "homestead estate" subject, in certain events that have not happened, to be divested, so that this one half part of the "homestead estate" became a part of his estate, or, on the contrary, said Ernest F. Pope took a contingent remainder in one half part of the "homestead estate" contingent upon his surviving his sister Grace M. Morse and her husband, Alvah W. Morse, a contingency that did not happen, so that the devise to Ernest F. Pope failed and the one half part of the "homestead estate" fell into the residue of the estate of Lillian G. Pope to be distributed under the fifth or residuary clause of her will. No other question has been argued. The decree of the Probate Court was in accordance with the second of these alternative interpretations of the will, that Ernest F. Pope took only a contingent remainder. The appellant contends for the first of these alternative interpretations of the will, that Ernest F. Pope took a vested remainder.

We think that the decree of the Probate Court was based upon the correct interpretation of the will, that Ernest F. Pope took only a contingent remainder in one half part of the "homestead estate," with the result that, since the contingency upon which it depended did not happen, the appellant, Essie Pope, the widow of Ernest F. Pope, is not entitled to share in the partition of the "homestead estate."

"The 'cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided that it is consistent with the rules of law.' *McCurdy* v. *McCallum*, 186 Mass. 464, 469. *Devine* v. *Deckrow*, 299 Mass. 28, 31. That intention 'is to be ascertained from a study of the will as a whole in the light of the circumstances attending its execution, *Crowell* v. *Chapman*, 257 Mass. 492; using ordinary canons of interpretation only so far as they accomplish their purpose of aiding in the determination of that intent[ion] but giving to the few combinations of words which have come to be rules of prop-

erty their legal effect. *Temple* v. *Russell*, 251 Mass. 231, 236.' *Cammann* v. *Abbe*, 258 Mass. 427, 429." *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 259.

By the fourth clause of the will the testatrix gave to her daughter Grace M. Morse and her husband, Alvah W. Morse, a life estate with survivorship in the "homestead estate" with a power of sale in the life tenants or the survivor of them. This clause contains a provision for distribution of the proceeds of a sale of the "homestead estate" under the power, under which provision Ernest F. Pope, at least if he was living at that time, would have shared in the proceeds. But as Grace M. Morse and her husband, Alvah W. Morse, have died without having exercised the power of sale, we are not now concerned with any interest that Ernest F. Pope would have taken in the proceeds of a sale of the "homestead estate" under this power of sale. We are concerned only with the interest that passed to Ernest F. Pope under the provision of the fourth clause of the will: "In case that at the death of the survivor of said Grace M. Morse and said Alvah W. Morse said homestead has not then been sold then it is to go to [*sic*] one half part to my said son, Ernest F. Pope, one quarter part of [*sic*] my said daughter, Ella B. Robertson and one quarter part to my said grandson, Ralph A. Robertson, or to the issue of any that may then be dead by the right of representation."

The fact that the gift to Ernest F. Pope by the provision of the fourth clause here quoted was subject to being defeated by an exercise of the power of sale — though upon the exercise of such power he would have been entitled to share in the proceeds of the sale — did not render the gift to him contingent. A remainder after a life estate is none the less vested because subject to being defeated by the exercise of a power of sale if, apart from the existence of the power, it would be a vested remainder. In these circumstances such a remainder is a vested remainder subject to being divested by the exercise of the power rather than a contingent remainder. *Dana* v. *Dana*, 185 Mass. 156, 160. *Ball* v. *Holland*, 189 Mass. 369. *Reed* v. *Reed*, 194

Mass. 216, 218. *American Baptist Publication Society* v. *Lufkin,* 197 Mass. 221, 223–224. *Coates* v. *Lunt,* 210 Mass. 314, 318. *Crowell* v. *Chapman,* 257 Mass. 492, 497, 499. (The words "contingent remainders" on page 497 of the *Crowell* case obviously are not used in their technical sense since the remainders in question are referred to as "vesting in right at the death" of the testator.) Sugden on Powers (8th ed.) pages 452–453. And in our opinion the conditional language with reference to the gift in default of sale under the power, "In case that at the death of the survivor of said Grace M. Morse and said Alvah W. Morse said homestead has not then been sold," does not of itself preclude this result so far as the effect of the existence of the power to sell is concerned. See *Dana* v. *Dana,* 185 Mass. 156, 157, 160; *Harvard College* v̄. *Balch,* 171 Ill. 275, 282. If the remainder in one half part of the "homestead estate" given to Ernest F. Pope was contingent rather than vested, it is for reasons other than the existence of the power of sale.

Two canons of interpretation of wills of a general nature are (a) that a "construction of a will, resulting in intestacy is not to be adopted unless plainly required" (*Hedge* v. *State Street Trust Co.* 251 Mass. 410, 412; *Boston Safe Deposit & Trust Co.* v. *Park,* 307 Mass. 255, 261) on the ground that it is to be assumed "that the testator intended to dispose of his entire estate and not to die intestate as to any part of it" (*Gardiner* v. *Pelton,* 260 Mass. 577, 582; *Weeks* v. *Pierce,* 279 Mass. 108, 118), and (b) that "no remainder will be construed to be contingent which may consistently with the intention be deemed vested." *Commissioner of Corporations & Taxation* v. *Alford,* 282 Mass. 113, 117. See also *Blanchard* v. *Blanchard,* 1 Allen, 223, 225; *Boston Safe Deposit & Trust Co.* v. *Abbott,* 242 Mass. 92, 94. It was said in *Commissioner of Corporations & Taxation* v. *Baker,* 303 Mass. 606, 611, that there is "a strong tendency to construe testamentary provisions as creating vested rather than contingent interests, especially where the beneficiaries are children or relatives." The former canon has no application to the present case since the will by the fifth or residuary clause thereof disposes of

the rest and residue of the estate of the testatrix. And with respect to the latter canon of interpretation it was said in *Commissioner of Corporations & Taxation* v. *Baker,* 303 Mass. 606, 611: "the intent of the testatrix when ascertained must prevail provided it is consistent with the rules of law," and if "it appears that she intended to postpone not only the use and enjoyment of her gift but also the acquisition therein of a vested interest until the happening of a future event, then the beneficiary must be deemed to have taken only a contingent interest."

We think that the language of the fourth clause of the will as a whole read in the light of the other provisions of the will discloses an intention on the part of the testatrix to postpone the acquisition by her son, Ernest F. Pope, of a vested interest in one half part of the "homestead estate" until the happening of a future event, that is, the death of the survivor of the life tenants, so that he must be deemed to have taken only a contingent interest — an interest contingent upon his surviving the life tenants, a contingency that did not happen.

The persons who were to come into possession and enjoyment of the "homestead estate" at the termination of the life interest therein — in the event that it was not sold under the power of sale — are necessarily to be determined as of the time fixed for the termination of the life interest, the death of the survivor of the life tenants. But the careful language of the testatrix with respect to the time as of which such persons are to be determined shows an intention on her part that not only the possession and enjoyment of the "homestead estate" but also the acquisition of vested interests therein was to be postponed until that time. The controlling language of the fourth clause is that in "case that at the death of the survivor of . . . [the life tenants] said homestead has not *then* been sold *then* it is to go to [*sic*] one half part to my said son, Ernest F. Pope, . . . [and other parts to other descendants of the testatrix], or to the issue of any that may *then* be dead by the right of representation." Clearly the word "then" is not used in this clause as a conjunction in the sense of

"in that event" or "in that contingency" but is used rather as an adverb of time meaning "at that time," referring to the time of the death of the survivor of the life tenants. See *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35, 39; *Hall* v. *Farmer,* 229 Mass. 103, 104–105. And the word "then" is used in a like sense in the provision for distribution of the proceeds of a sale. But the word "then" is not used in the fifth and residuary clause of the will by which the residue of the estate is given to named descendants of the testatrix "or to the issue of any who may be dead by the right of representation." Obviously there would have been no reason for using the word "then" in that clause since the time at which the clause would take effect was the time of the death of the testatrix, and the omission of the word "then" from that clause serves to mark a distinction between that clause and other provisions of the will where the word "then" is used to fix a different time, the time of the death of the surviving life tenant.

The use of the word "then" in the provision with respect to the "homestead estate," that "then it is to go to [*sic*] one half part to my said son," tends to negative an intention on the part of the testatrix to make a present gift of one half part of the "homestead estate" to him. And her failure to make a present gift has some tendency to show that it was her intention not only to postpone possession and enjoyment but also to postpone the acquisition of a vested interest. *Hale* v. *Hobson,* 167 Mass. 397, 399. *Crapo* v. *Price,* 190 Mass. 317, 322–323. *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35, 39. *White* v. *Underwood,* 215 Mass. 299, 301. *Security Trust Co. of Lynn* v. *Boyce,* 257 Mass. 586, 588. Moreover, the provision with respect to this one-half part of the "homestead estate" that "then it is to go" relates not only to the gift to the testatrix's son, Ernest F. Pope, but also to the gift "to the issue of any [here the son] that may then be dead." This gift to issue of Ernest F. Pope, as appears from the language used, was contingent upon his death prior to the termination of the life interest by reason of the death of the surviving life tenant, the time fixed for distribution, that is,

the time fixed for the remainder interest in the "homestead estate" to come into possession and enjoyment. Until the time fixed for distribution, it was uncertain who would take the future interest in the "homestead estate." This appears not only from the fact that the gift alternative to the gift to Ernest F. Pope was in terms contingent upon Ernest F. Pope being dead at the time fixed for distribution but also from the fact that this gift was to his "issue" and not to his children, and the persons who would constitute his "issue" and would take the gift under that designation could not be determined until that time. *Gardiner* v. *Everett*, 240 Mass. 536, 539. *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 263–265, 265–266. The fact that the gift to the "issue" of Ernest F. Pope could not vest until the time fixed for distribution has a tendency to show that "the vesting of the whole was postponed till the arrival of the event on which the distribution is made to depend." *Hale* v. *Hobson*, 167 Mass. 397, 398–399. *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35, 39. See also *Crapo* v. *Price*, 190 Mass. 317, 321–322; *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 266.

· The gift of a future interest in one half part of the "homestead estate" to the "issue" of Ernest F. Pope was an alternative gift. Clearly the words referring to such issue are not words of limitation defining the nature of the estate given to Ernest F. Pope. *O'Rourke* v. *Beard*, 151 Mass. 9, 10–11. Nor were they used for the purpose of showing clearly that the testatrix did not intend the devise to lapse in case of the death of Ernest F. Pope leaving issue before the death of the testatrix, as was held with respect to the words used in the will considered in *Gibbens* v. *Gibbens*, 140 Mass. 102, 105. The words here used relate to the time of the death of the surviving life tenant and not to the time of the death of the testatrix. Moreover, the gift to the "issue" of Ernest F. Pope was not a gift by way of substitution in the sense of a supplanting gift. See for the distinction between an "alternative limitation" and a "supplanting limitation" Am. Law Inst. Restatement: Property, § 253, comment c. The gift to the "issue" of Ernest F. Pope ascer-

tained as of the time of distribution, the time of the death
of the surviving life tenant, is as direct a gift as the gift to
Ernest F. Pope. See *Crapo* v. *Price*, 190 Mass. 317, 321–
322; *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass.
255, 265–266. The language of the will fixes the same time
for these gifts to take effect, the time of the death of the
surviving life tenant. One half part of the "homestead
estate" is "then . . . to go" to Ernest F. Pope or to his
"issue," and the gifts are expressly made in the alternative
by reason of the use of the conjunction "or" connecting
them. The canon of construction stated in Am. Law Inst.
Restatement: Property, § 252, relating to an "alternative
limitation employing the word 'or,'" is as follows: "In a
limitation purporting to create a remainder or an executory
interest, in 'B or his children,' or in 'B or his issue,' or in
'B or his descendants,' or by other language of similar im-
port, the alternative form tends to establish as to the in-
terest of B that (a) a requirement of survival to the end
of all preceding interests exists; and (b) such survival is a
condition precedent of such interest." Compare §§ 253,
254. See *Wyman* v. *Kinney*, 111 Vt. 94, 105, and cases
cited. This canon of construction is clearly applicable to
the language of the will here involved. And in the light
of the other considerations herein stated we think that it
must be followed with the result that, by reason of the
death of Ernest F. Pope before the death of the surviving
life tenant, the gift of an interest in one half part of the
"homestead estate" to him never vested in him.

The conclusions reached in some of the cases herein cited
were undoubtedly influenced to some extent by other con-
siderations than those for which these cases are cited, but
this fact does not affect the principles of construction for
which they are cited.

Ordinary canons for the construction of wills are "estab-
lished only as aids for determining testamentary intent"
and "are to be followed only so far as they accomplish
that purpose." *Ware* v. *Minot*, 202 Mass. 512, 516. There
is nothing in the will under consideration — so far as it is
before us — to indicate that the canons of construction

herein referred to do not accomplish that purpose. The conclusion here reached may seem to rest upon a somewhat technical analysis of the language used by the testatrix. It is, however, to be assumed that this language was used by her advisedly to express her intention, and we "have to go upon slight differences." *Lee* v. *Welch*, 163 Mass. 312, 314. If the testatrix had added the words "if he was then living" to the gift of an interest in one half part of the "homestead estate" to Ernest F. Pope, there could be no doubt of the correctness of the conclusion here reached. But it would be even more technical to rest a different conclusion upon the omission of these words when the same intention of the testatrix is shown by other language used by her.

Little aid in the construction of the clause of the will whereby a future interest in one half part of the "homestead estate" was given to Ernest F. Pope can be obtained from the general scheme of the will. Unfortunately the entire will is not incorporated in the record, nor does the date of its execution appear. Moreover, all the circumstances of the testatrix with respect to her ownership of property and her family at the time of the execution of the will, or, indeed, at the time of her death, do not appear. It is apparent, however, from the parts of the will that are before us that it was the general scheme of the will that her "homestead estate" and the residue of her property should go to her descendants. The only departure from this general scheme was her provision for the husband, Alvah W. Morse, of her daughter Grace M. Morse. But this departure from the general scheme is readily explicable. It is probable that the testatrix intended that her daughter should occupy the "homestead estate" during her life. Not unnaturally the testatrix provided that this daughter's husband should share in the life interest therein and, indeed, should retain that interest throughout his life even if he survived his wife, the daughter of the testatrix. Also not unnaturally the testatrix provided that if the "homestead estate" should be sold during his lifetime he should share in the proceeds of the sale by way of compensation for the loss of his life interest therein. However, no provision is made for his issue

— not the issue of his wife, the daughter of the testatrix —
to share in such proceeds, although such a provision is made
for the "issue" of the descendants of the testatrix.   No
other provision is made for him by either the fourth or the
fifth clause of the will, and no reference is made in either
of those clauses to any spouse of the other daughter of the
testatrix, of the son of the testatrix or of her grandson, al-
though it appears that at the death of the testatrix the son
was married to the appellant, Essie Pope.   No affirmative
intention on the part of the testatrix that this appellant
should share in the "homestead estate" or its proceeds is
disclosed by the will.   If she is to take any such share it
is by reason of the gift by the will to her husband.   Clearly
no intention of the testatrix that the appellant should take
any such share that would furnish a reason for an early
vesting of an interest in one half part of the "homestead
estate" in Ernest F. Pope in order to provide for her is dis-
closed by the will.   The conclusion here reached that the
vesting of this interest was intended to be postponed until
the death of the surviving life tenant is not in conflict with
any intention of the testatrix disclosed by her will.

*Decree affirmed.*